Dorothy **SHEPPARD, et al., Plaintiffs,**

**v.**

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.**

No. 94–CV–0403(JG).

United States District Court,
E.D. New York.

July 26, 1995.

Alan Fuchsberg, The Jacob D. Fuchsberg Law Firm, New York City, for plaintiffs.

Kenneth G. Standard, Consolidated Edison Co. of New York, Inc., New York City, for defendant.

## MEMORANDUM AND ORDER

AZRACK, United States Magistrate Judge:

Plaintiffs have brought the present action against defendant, Consolidated Edison Company (hereinafter "Con Ed" or defendant) alleging employment discrimination. Presently, plaintiffs seek to depose Dr. Kenneth Clark and Hilton Clark regarding a 1979 study performed for Con Ed entitled "Equal Employment Opportunity and Affirmative Action at Consolidated Edison" and a "Survey of Employee Opinions at Consolidated Edison." Plaintiffs also seek documents relating to this study, including the reports submitted by the Clarks to Con Ed in 1979.

Defendant objects to the deposition of Kenneth and Hilton Clark as well as the production of the 1979 study based upon the "self-critical analysis" privilege. Specifically, defendant argues that disclosure of the self-critical material will create a chilling effect on future disclosure of sensitive information. Defendant argues that disclosure would violate the confidentiality intended by the 1979 study which will, in turn, "not encourage companies ... to expose themselves to the risk of having their most confidential personnel matters exposed to the public and presented to plaintiffs' attorneys in a convenient package to facilitate their attacks on the companies that act in good faith to advance the employment interests of minorities and women." (Letter from K. Standard, Esq. to Magistrate Azrack, July 21, 1995).

In response, plaintiffs continue to pursue disclosure claiming that the 1979 study, its supporting documentation and the information known to the Clarks is relevant and essential to their claims of discrimination. Plaintiffs specifically argue that full discovery of the 1979 study will demonstrate defendant's notice of its discriminatory policies. This Court has conducted an *in camera* review of the 1979 report as submitted by defendant.

■ The self-critical analysis privilege is based upon the notion that "disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law or with professional standards." *Reilly v. Metro–North Commuter Railroad Co.*, No. 93 Civ. 7317, 1995 WL 105286, *1 (S.D.N.Y. Mar. 13, 1995) (*quoting Hardy v. New York News, Inc.*, 114 F.R.D. 633, 640 (S.D.N.Y.1987)). Documents and information subject to this qualified privilege must first be the "result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if discovery were allowed." *Chemical Bank v. Affiliated FM Insurance Co.*, No. 87 Civ. 0150, 1994 WL 89292 (S.D.N.Y. Mar. 16, 1994) (*quoting* Note, The Privilege of Self–Critical Analysis, 96 Harv. L.Rev. 1083 (1983)).

■ The party resisting discovery must make a "detailed and convincing showing of the harm to be anticipated from the disclosure at issue in the particular case." *Cobb v. Rockefeller Univ.*, No. 90 Civ. 6516, 1991 WL 222125, *1 (S.D.N.Y. Oct. 24, 1991). Even where courts have applied the self-critical analysis privilege, the privilege does not apply to underlying facts but merely protects evaluative material. *See Abel v. Merrill Lynch & Co., Inc.*, No. 92 Civ. 6261, 1993 WL 33348, *2 (S.D.N.Y. Feb. 4, 1993) (no issue of privilege because reports contain only "non-evaluative facts, statistics or other data"); *Cobb*, 1991 WL 222125, *2; *Lizotte v. New York City Health and Hospitals Corp.*, No. 85 Civ. 7548, 1989 WL 260217, *4–5 (S.D.N.Y. Nov. 28, 1989) ("protection is for evaluative discussions, not purely factual matter").

■ Therefore, in the present case, it is clear that the factual basis of the 1979 study are discoverable. The more challenging issue is whether the evaluative information contained in the 1979 report is discoverable and whether the Clarks may be questioned about this material.

■ Here, the 1979 report certainly meets the first two requirements of the relevant tripartite test. Namely, the evaluative material is a result of a self-critical analysis, and there is a strong public policy in favor of the

flow of self-critical analysis of employment discrimination. The crux of the present case rests upon the third criterion—that "the information must be of the type whose flow would be curtailed if discovery were allowed." *Chemical Bank*, 1994 WL 89292.

Defendant here, and defendants in similar cases, have argued that disclosure would chill future voluntary self-critical analysis of companies who in good faith seek to improve their employment practices and comply with Title VII. This Court concurs with defendant. Companies will surely be chilled from memorializing their self-critical analysis knowing that it would be disclosed to an aggrieved employee. Such a practice would not only curtail the flow of such information, but may also diminish the value of the information if companies are too skeptical of memorializing their analysis and thus fail to circulate the information to the persons responsible for employment decisions. *See Flynn v. Goldman, Sachs & Co.*, No. 92 Civ. 0035, 1993 WL 362380 (S.D.N.Y.1993); *In re Crazy Eddie Sec. Litig.*, 792 F.Supp. 197, 205 (E.D.N.Y.1992); *Mazzella v. RCA Global Communications, Inc.*, No. 83 Civ. 3716, 1984 WL 55541 (S.D.N.Y. Mar. 28, 1984) (Slip Op). *Contra Reilly*, 1995 WL 105286, *1.

Defendant has articulated the chilling harm that it would incur if the report were disclosed. On balance against plaintiffs' need for the report given the fact that the underlying facts are discoverable and will be available to plaintiffs, defendant's harm outweighs plaintiffs' need. The harm to defendant itself as well as the public policy considerations warrant this conclusion and this Court is satisfied that disclosure of the underlying facts of the 1979 study will satisfy plaintiffs' present need.

Therefore, to the extent the reports contain evaluative material, this Court will not require defendant to disclose this information. The underlying facts and statistics, however, are not effected by the self-critical analysis privilege and must be disclosed.

It must be noted that plaintiffs have already acquired a portion of the 1979 report from an unknown source. This Court will not curtail plaintiffs' use of this material and plaintiffs may use it in future depositions and other discovery in this action. This Court, of course, does not pass on the admissibility of the reports as that issue must be raised at trial.

SO ORDERED.